No. 6505.

STATE EX REL. EXCHANGE BANK VS. BOARD OF LIQUIDATORS.

Under the funding act of 1874 the Board of Liquidators provided for by that act are vested with discretionary power to fund, or refuse to fund, any and every indebtedness of the State presented to them for funding; but by the act of 1875, (supplementing that of 1874,) they are prohibited from funding any bonds of the State enumerated in said act, until this court has declared them to be valid.

The Board of Liquidators, under said funding acts of 1874 and 1875, having discretionary powers, can not be compelled by a mandamus, to fund any indebtedness of the State.

APPEAL from the Superior District Court, parish of Orleans.  *Lynch, J.*

*Kennard, Howe & Prentiss,* for relator and appellant.

*H. R. Steele,* Assistant Attorney General, and  *T. A. Flanagan,* for defendant.

The opinion of the court was delivered by

MANNING, C. J.  The relator holds five bonds of one thousand dollars each, issued by the State to the Baton Rouge, Grosse Tete, and Opelousas railroad in 1855, and purchased by him in 1872, which with their coupons he desires to fund in the consolidated bonds of the State. The exchange is to be made at the rate of sixty cents on the dollar, under the funding act of 1874. To accomplish this he applied to the defendant,

who refused to fund them, alleging that the act of May 17, 1875, had prohibited it until the Supreme Court of this State had so ordered. Thereupon the relator took this proceeding by mandamus to compel the defendant to exchange his bonds and coupons for the consolidated bonds of the State.

The defendant met the alternative writ with a denial that relator was in a situation which authorized him to require that his bonds be funded, and for this: that the act of 1875 expressly prohibits the defendant from issuing any bonds in exchange for outstanding bonds or warrants of date anterior to January 24, 1874, the legality of which has been or shall hereafter be questioned, until said bonds or warrants shall have been declared by the Supreme Court of this State legal and valid obligations against the State, and that they were issued in strict conformity to law, and not in violation of the State and Federal constitutions, and for a valid consideration. Acts 1875, p. 110.

The same act proceeds to declare "questioned and doubtful as to their legality and validity" certain enumerated bonds, among which are thirty thousand dollars of bonds of the kind held by the relator, and the Board of Liquidation is prohibited from issuing bonds, authorized by the funding act, in exchange for the bonds thus enumerated until their legality, validity, and consideration have been tested under the provisions of the act and a final decree rendered thereon. The relator must therefore obtain from this tribunal a final decree establishing the legality and validity of his bonds before he can properly demand of the defendant that they be funded, and until he has obtained such decree he is not entitled to the writ of mandamus to compel the defendant to do that which it is not his duty to do before a final decree of this court is exhibited to him declaring such funding to be his duty.

The answer of the defendant also denies that relator's bonds form any portion of the floating debt, or of the valid outstanding bonds, within the meaning of the supplemental funding act, and alleged that they did not pass from the possession of the State lawfully, and that the State did not receive any valid consideration for them.

It is manifest that the issue thus tendered is of higher dignity than a mere question of practice. It strikes at the root of the power of the Board of Liquidation to fund certain enumerated bonds, or classes of bonds, and the whole scope of that power, its original range and extent, and its subsequent limitation, come necessarily under review in order to determine the rights of relator in the present proceeding.

The funding act (acts 1874, p. 39) was a confession of bankruptcy on the part of the State. It provided for the exchange of all valid outstanding bonds of the State, and all valid warrants drawn previous to its enactment, with certain exceptions, for consolidated bonds at the

rate of sixty cents in the latter for one dollar of the former. To effect this exchange, a Board of Liquidators was constituted, whose duty was to receive the old bonds and warrants and issue the new bonds, and in case of the rejection of any bond or warrant by this board and its refusal to make the exchange the holder of the bond or warrant thus rejected might apply by petition to the proper court for relief, and if final judgment should be rendered in his favor against the board, then it shall be its duty to fund the bond or warrant thus offered.

· The supplemental act, enacted the following year, separated certain bonds from the general mass of the State obligations, and put them under suspicion. It enumerated them, in aggregate over fourteen millions, and declared their legality and validity questionable, and prohibited the Board of Liquidation from exchanging them until their validity shall be tested in the manner pointed out by the act, and prescribed that the sole convincing and determinative test should be a final decree of this tribunal declaring them to be legal and valid obligations of the State, and that they were issued in strict conformity to law, and not in violation of the constitution of this State or of the United States, and for a valid consideration.

In order to enlarge this facility for testing the validity of any bond enumerated in the proscribed list, permission was given to any person assessed for State taxes to institute suit in his own name, or to intervene in any suit instituted by another, against the Board of Liquidation and prosecute it to a final termination; and any holder of bonds or warrants whose validity is questioned in any suit brought under the provisions of this act may intervene in such suit, the final termination of all of them being a decree rendered by the Supreme Court, without which the bond or warrant thus questioned could not be funded. ·

Thus it is apparent that the board was not compelled to exchange any bond or warrant that might be presented under the act of 1874 for a consolidated bond without question. That it had a discretion is obvious from the provision made for the holder in case his bond was rejected; i. e., he may apply by petition to a proper court for relief, and if final judgment is rendered in his favor, it shall be the duty of the board to fund his claim.

But the act of 1875 deprived the board of this discretion *quoad* the bonds enumerated in it. So far from imposing upon its members the duty of inquiry touching the validity, or legality, or consideration of these bonds, the act commanded them to assume that they were invalid, illegal, and of no consideration, and prohibited them from deciding the question—prohibited them from exchanging the bonds until another designated tribunal had decided it for them.

Under the act of 1874, it is the duty of the board to fund the general

indebtedness of the State, with discretionary power to reject such claims as did not seem proper, and with the right to the holder to test the merits of the rejection before a competent court. Under the act of 1875, it is the duty of the board to reject the bonds enumerated in it, and the holder of them must himself lift the cloud which that debt declares rests upon them, and vindicate their validity, legality, and good consideration by obtaining a decree from the court of the last resort in his favor. That which was the duty of the board to do under the first act is its imperative duty not to do under the second.

A mandamus is an order issued in the name of the State, addressed to an individual, or corporation, or court of inferior jurisdiction, directing the performance of some act belonging to the place, duty, or quality with which it is clothed. Its object is to prevent a denial of justice, and it should therefore be issued in all cases where the law has assigned no relief by the ordinary means, and even when a party has other means of relief, if the slowness of ordinary legal forms is likely to produce such delay that the public good and the administration of justice will suffer from it. Code of Practice, arts. 829 *et seq.* Our courts have more extensive power under the Code of Practice in issuing the writ than have those of common-law jurisdiction, but it never issues to compel public officers to do an act in which they have discretionary power. College vs. Treasurer, 2 La. 395. One of its important and distinctive features is, that it is used merely to compel and coerce the performance of a pre-existing duty. Wherever there is a clear and specific legal right to be enforced, or a duty which ought to be performed, and there is no other specific and adequate legal remedy, the writ will issue. It is not granted in doubtful cases. To warrant the relief, the relator must have a clear and legal right to the performance of a particular act or the fulfillment of a particular duty at the hands of the respondent, and this right must be a complete and not merely an inchoate right. High's Extraordinary Legal Remedies, sections 7, 9, 10.

To justify the issuance of the writ in this case, the relator must have a present and perfect right to have the bonds presented by him funded, and it must be the respondent's duty to fund them, a duty the performance of which is not discretionary on the one hand—a right which is not inchoate and imperfect on the other.

Another prerequisite is that the respondent shall have refused to do that which was his duty to do. It is not sufficient that the relator has a specific legal right to be enforced, but its enforcement must have been obstructed and prevented by the refusal of the respondent. It is not sufficient that the relator may have a legal duty to perform, but that duty must pre-exist, and his refusal to perform it is the basis of the writ, and must be an antecedent fact or act which alone justifies its issuance.

The relator's bonds were among those enumerated in the act of 1875 as "questioned." The law denounced them as *suspect*, and imposed upon the board the duty of refusing to fund them. It was not only not its duty to fund them, but its duty was not to fund them. Its only warrant for funding them was the sanction of their validity and legality, attested by a final decree of this court. Until that was imparted to them, there was no dereliction of duty by the board in its refusal to fund the bonds, and nothing but its refusal to do its duty can furnish the legal occasion for the command to do it.

It is objected that this ruling will compel circuity of action, and will foster multiplicity of suits, which the law abhors, for if the holder of bonds is driven to his suit against the board to test their validity, and can not halt until he has obtained a final decree of this court, he must at last invoke the writ of mandamus to compel the board to fund, and, again, that the validity of the bonds can as well be inquired into and established by the writ of mandamus as by the direct action. But it is not to be assumed that the board will refuse to do its duty when the bond-holder presents that which alone can authorize it to act, viz.: the decree of the Supreme Court. And it must be assumed that the board will refuse so long as it is its duty to refuse. The writ of mandamus is not fitted to ascertain the validity of bonds that are made doubtful, not by a presumption of law merely, but by an express statutory declaration. Its essence is the enforcement of a right already ascertained, not the ascertainment of a possible right already declared doubtful.

The intent of the supplemental funding act will be the more apparent if we consider the nature and effect of the judgment we are now asked to render. It is to make the mandamus peremptory, that is, to say to the lower court, there was error in your not ordering the respondent to fund the relator's bonds, although that respondent was never obliged to fund them until this decree is exhibited to him. The essential prerequisite to the respondent's funding them is the decree now rendered upon his refusal to fund them. Not until the final decree of this court pronounces the validity of the bonds is his refusal a dereliction of duty, but we are asked to declare their validity, and in the same breath to reverse the judgment of the lower court as being wrong, when the only thing that could justify it in rendering a different judgment would be the exhibition of our decree, now for the first time rendered. That decree is one of the ingredients, an essential ingredient, of the relator's cause of action, but it is not supplied until the action terminates. It should have been a germ that developed into life, and gave vitality to a right until then only in embryo. By this construction, the decree terminates the existence of the action, though without it the action could not have lived.

The final decree of this court was a necessary preliminary to the

relator's demand of the board to fund his bonds. The refusal to obey that decree was a necessary preliminary to the issuance of the mandamus to the respondent. The case lacks both, and therefore

It is ordered, adjudged, and decreed that the judgment of the lower court refusing the mandamus is affirmed with costs.

## CONCURRING OPINION.

SPENCER, J. In the case of Durant vs. the Board of Liquidation the defense put at issue the validity, consideration, legality, and constitutionality of the bonds, without objection as to the proceeding by mandamus being premature. We then held that this objection, made in the briefs of counsel only, came too late, and intimated that such a cumulation of the merits with proceedings for mandamus at least avoided multiplicity and circuity of action and diminished costs. In the case now before us, the objection to the form of proceeding is specially made *in limine*. An attentive examination of the funding bill and supplementary acts constrains me to the conclusion that the objection must prevail, however illogical I may think the law to be.

I therefore concur in the opinion delivered by the Chief Justice.

## DISSENTING OPINION.

DEBLANC, J. Plaintiff is the holder of several bonds made and delivered by the State of Louisiana to the order of the Baton Rouge, Grosse Tete, and Opelousas Railroad Company, and bought, it is alleged, before maturity and at their market value.

Defendant refuses to fund said bonds, on the grounds :

First—That the suspicion which rests on their validity has not been removed by a decree of this court.

Second—That the board is expressly prohibited, before such a decree, from funding any of the bonds belonging to the suspected class.

Third—That said bonds were not lawfully issued, did not lawfully pass from the possession of the State, and they are not, within the meaning of our constitution and statutes, any portion of the floating debt of Louisiana.

Thus, without exception, every issue which can now or hereafter be raised, by either plaintiff or defendant, in regard to the funding of those bonds, is raised in and by their pleadings. Their validity and the title of the holder are asserted by plaintiff, denied by defendant. The action could be reduced, the defense can not be increased.

Plaintiff's petition contains two distinct demands, one that the board show cause why it should not fund, as required; the other that by mandamus we command the funding. · The last of its demands is premature,

the other is not. If both can not now be urged, the first can, and that which is irrelevant does not vitiate that which is relevant.

If plaintiff again appears before our courts, what shall it ask? Less the mandamus, which at this very moment it is asking, a decree—to enforce which an additional decree may become indispensable—one recognizing the right, the other ordering the execution of the first. Why, then, not decide at once whether the bonds are fundable, whether that branch of the action should be granted or denied?

I respectfully dissent from the opinion of the court.